DOCKETED ON CM
MAY 27 2004
BY ____ 037

FILED
MAY 26 2004
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY ____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| DIGITAL THEATER SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MINTEK DIGITAL, INC., <br><br> Defendant. | CASE NO. 02-902 CJC (ANx) <br><br> ORDER GRANTING IN PART DIGITAL THEATER SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT AND DENYING MINTEK DIGITAL, INC'S CROSS-MOTION FOR SUMMARY JUDGMENT |

Plaintiff Digital Theater Systems, Inc. ("DTS") provides technology that allows consumers to experience five-channel surround sound through devices such as digital video disc ("DVD") players. (Compl. ¶¶ 8-9.) Manufacturers and distributors of DVD players and other devices that can transmit and decode DTS sound may apply to DTS for a license to display one or more of DTS's registered trademarks on their devices. (Compl. ¶¶ 8-9; Lee Decl., Exh. G.) Defendant Mintek Digital, Inc. ("MDI") imports and distributes DVD players. (MDI's Opp. 12:16-19.) Beginning in late 2001, and continuing through at least the end of 2002, MDI imported and sold at least 1,355,141 DVD players bearing the Mintek tradename/trademark and the registered DTS trademarks. (Rosen Decl., Exh. C (MDI's Supplemental Resp. to DTS's First Set of Interrogs. ("MDI's Responses") 56:10-12.) MDI did not hold a license from DTS.

(MDI's Opp. 12:16-19.)

On September 30, 2002, DTS filed suit against MDI for: (a) False Designation of Origin, 15 U.S.C. § 1125(a); (b) Trademark Dilution, 15 U.S.C. § 1125 and California Business and Professions Code § 14330; (c) Trademark Infringement, 15 U.S.C. § 1114; and (d) Unfair Competition, California Business and Professions Code §§ 17200, 17500, and California common law.

On April 12, 2004, DTS and MDI filed cross motions for summary judgment. DTS sought summary judgment as to all of its causes of action, treble damages under the Lanham Act for intentional infringement and punitive damages under its common law unfair competition claim. MDI's motion for summary judgment sought relief on various grounds, including the contentions that the DVD players that it imported and sold were manufactured by a DTS licensee and that the players contained "genuine" DTS technology.

After full consideration of the moving papers, the oppositions and replies, the evidence and authorities submitted by counsel, as well as oral argument, the Court GRANTS DTS's motion for summary judgment with respect to MDI's liability on all of DTS's claims and DENIES MDI's cross-motion for summary judgment. The undisputed evidence has shown that Mintek DVD players bearing the registered DTS trademarks were manufactured and sold without DTS's authorization and quality control certification. For the reasons set forth below, MDI is liable to DTS under its Lanham Act and state unfair competition claims because MDI imported and sold DVD players that displayed the registered DTS trademarks without obtaining DTS's authorization to use its trademark. The Court declines, however, to award damages at this juncture. The case should proceed to trial so that the parties may present evidence on the issue of damages claims.

# FACTUAL BACKGROUND[1]

## A. MDI Used The Registered DTS Trademarks

DTS is the registered holder of the valid trademarks known as DTS DIGITAL OUT and DTS DIGITAL SURROUND (the "Registered DTS Trademarks"). (DTS's Separate Statement of Undisputed Facts ("DTS's SSUF") ¶ 1; MDI's Statement of Genuine Issues ("MDI's SGI") ¶ 1.) From late 2001 through at least the end of 2002, MDI imported and distributed at least 1,355,141 DVD players that displayed the Registered DTS Trademarks. (Rosen Decl., Exh. C (MDI's Responses), 56:10-12.)

## B. MDI Was Not Authorized To Use The Registered DTS Trademarks

MDI has never had a license from DTS to import or distribute DVD players bearing the Registered DTS Trademarks. (Nieda Decl. ¶ 7.) MDI claims that its use of the marks is not actionable because the DVD players at issue in this lawsuit were purportedly manufactured by Jiangsu Shinco Electronics Group Co., or its successor, Changzho Shinco Digital Technology Co., LTD (collectively, "Shinco"), which had a limited license from DTS to use the Registered DTS Trademarks. The DVD players at issue in this lawsuit, however, were not manufactured pursuant to the terms of the Shinco license agreement. (Lee Decl., Exhs. F and G.)

Shinco was licensed only "to use the [DTS] Mark in accordance with" its license agreement. (Lee Decl., Exh. G § 8.2.) The Shinco license provides that: "The Mark may not be used in direct combination with the trade name, trademark or symbol of another entity in any manner that suggests a connection or relationship between DTS and the

---

[1] The facts recited in this section are based on the undisputed evidence.

other entity." (Lee Decl., Exh. G § 8.3(2).) Shinco's license, moreover, requires it to refer prospective "Other-Trademark Purchasers" (customers who intend to resell DVD players under a non-Shinco tradename) "to DTS for a license." (Lee Decl., Exh. G § 9.) Any modification, amendment, supplement, or waiver of any term in the license, including Section 8.3(2), must be "made in writing and duly signed by an authorized representative of both parties." (Lee Decl., Exh. G § 20.2.) No such writing has been offered by MDI, nor has MDI offered evidence that otherwise DTS consented to MDI's use of the trademarks.

In addition, the DVD players at issue in this lawsuit were not subject to DTS's quality control approval. (Nieda Decl. ¶ 6.) No Mintek labeled DVD player has ever been submitted to DTS for quality control testing. *Id.* Consequently, the DVD players that MDI imported and distributed were not genuine because, as the Court held in denying MDI's first motion for summary judgment, "when goods manufactured by agreement with the trademark holder are distributed without the holder's authorization and quality control approval, they are not considered genuine." *See also, El Greco v. Shoe World*, 806 F.2d 392, 395 (2nd Cir. 1986). Moreover, the last DVD player submitted by Shinco, from which MDI claims to have acquired its DVD players, failed DTS's quality control tests and was denied certification. (Hoang Decl., ¶ 12, Exh. A.) After that model failed, neither Shinco nor MDI ever submitted any DVD players for testing by DTS. (Nieda Decl. ¶ 11.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party has shown that there is "no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(c). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable

4

jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1976). A defendant moving for summary judgment may defeat a claim either by negating an essential element of the plaintiff's claim or by demonstrating the absence of evidence for an essential element of the plaintiff's claim. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-160 (1970); *Celotex*, 477 U.S. at 325. In ruling on a summary judgment motion, a court must view all facts and draw all inferences in the light most favorable to the nonmoving party. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 456 (1992).

If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden then shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. The party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

## DISCUSSION

DTS has produced evidence sufficient to satisfy its burden of proof with respect to MDI's liability on all of DTS's claims. MDI argues that its use of the DTS trademarks was either permitted under the terms of the licensing agreements or, alternatively, that DTS consented to MDI's use of the DTS trademarks with the Mintek trademark. MDI, however, has not produced any evidence in support of either of these arguments or any evidence otherwise giving rise to a genuine issue of fact with respect to any of DTS's claims.

A.  Trademark Infringement – 15 U.S.C. § 1114

DTS is entitled to partial summary judgment on the issue of MDI's liability for its trademark infringement claim. The following are the elements of a claim for trademark infringement: (1) plaintiff owned valid registered trademarks; (2) defendant used colorable imitations of plaintiff's marks; (3) defendant used the marks in commerce; (4) defendant used the marks without plaintiff's consent; and (5) defendant used the marks in a way that was likely to cause confusion or to cause mistake or to deceive. *See E. & J. Gallo Winery v. Pasatiempos Gallo*, 905 F. Supp. 1403, 1412 (E.D. Cal. 1994). There is no genuine issue of material fact as to any of these elements.

### 1. DTS Owns Valid Registrations Of The Trademarks

DTS owns valid registrations for the Registered DTS Trademarks. (Compl. ¶ 7.)

### 2. MDI Used Colorable Imitations Of The Trademarks

MDI used colorable imitations of the Registered DTS Trademarks in the same way that DTS licensees use the marks. (Rosen Decl., Exhibit B (the Wu Decl. of September 10, 2003) at ¶ 4 and Exhibit D (photocopies of MDI advertisements).) In fact, it is undisputed that MDI used marks identical to the registered trademarks.

### 3. MDI Used The Trademarks In Commerce

MDI imported and sold at least 1,355,141 DVD players bearing the Registered DTS trademark. (Rosen Decl., Exh. C (MDI's Responses) 56:10-12.) Although MDI asserts that "Mintek does not manufacture the DVD players that it distributes," (MDI's Opp. 3:11-12), this assertion does not give rise to a genuine issue of material fact

because, as a matter of law, importation and sale of trademarked goods is use of the trademark in commerce. 15 U.S.C. § 1127; *In re Application of Silenus Wines, Inc.*, 557 F.2d 806, 808 (C.C.P.A. 1977) ("[W]e hold that appellant's importation of wine bearing its trademark from France and intrastate sale of imported wine is a 'use in commerce' as defined by the Trademark Act."); *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1199 (9th Cir. 1979). Therefore, whether Shinco or Mintek manufactured the DVD players at issue is irrelevant. Similarly, MDI's assertion that it "never advertised the DVD-2300," which accounts for less than 0.0007% of the DVD players at issue in this lawsuit, (Jiang Supp. Decl., ¶ 4), does not raise a genuine issue of material fact because MDI imported and sold that model. (MDI's SGI # 2; MDI's Additional Issues of Fact ("MDI's AIF") # 2.)

### 4. MDI Used The Trademarks Without Consent

DTS has presented evidence that it never consented to the use of the Registered DTS Trademarks in conjunction with the "Mintek" tradename. (Nieda Decl., ¶ 7.) MDI does not refute this fact. Instead, MDI claims that it "merely acquired and sold DVD players containing genuine DTS technology and carrying the DTS trademark, without obtaining a license to use the trade name." (MDI's Opp. 12:16-19.) MDI asserts that its use of the Registered DTS Trademarks on its Mintek DVD players is not actionable because either (a) Shinco was a DTS licensee; (b) DTS consented to its use of the Registered DTS Trademarks; or (c) DTS approved of the DVD players "by commonality" along with Shinco models. None of these assertions raise a genuine issue of material fact.

Even if Shinco manufactured the DVD players, MDI's use of the Registered DTS Trademarks was infringing and the players are not "genuine" because the Shinco license did not extend to the use of the Registered DTS Trademarks in conjunction with a tradename or trademark owned by anyone other than Shinco. (*See, e.g.*, Lee Decl., Exh.

7

G §§ 8.2, 8.3(2), 9.) MDI, and not Shinco, registered the Mintek tradename and owns the Mintek trademark. (Rosenfeld Decl. ¶¶ 5-6; Exhs. F & G.) *See Babbit Electronics. v. Dynascan Corp.*, 38 F.3d 1161, 1180 (11th Cir. 1994) (finding trademark infringement when the goods at issue "contravened the terms of the Agreement").

Likewise, there is no merit to MDI's argument that DTS somehow consented to the placement of its trademarks on MDI's unlicenced DVD players. No Mintek DVD player was ever submitted to DTS for testing. (Nieda Decl. ¶ 6.) Shinco's license precludes such a consent that is not made in writing. (Lee Decl., Exh. G § 20.2.) Moreover, MDI admits that DTS objected from the beginning: "In or around June of 2001, DTS voiced objection to Mintek selling DVD players bearing the DTS trademark." (MDI's Opp. 8:7-8.) Any one of these facts, standing alone, forecloses MDI's claim of consent.

There is also no evidence to support the assertion that DTS approved of the DVD players at issue in this case "by commonality" when it approved some Shinco models. Under the Shinco license, Shinco could obtain approval by commonality only for DVD players with a Shinco tradename. (Lee Decl., Exh. G §§ 8.2, 8.3(2), 9.) Even if the Mintek tradename DVD players could have been approved by commonality under the Shinco license, the only evidence submitted by MDI in support of any such approval is a Shinco application for approval by commonality that was submitted to DTS nearly a year before MDI was formed, does not reference the Mintek tradename, and lists DVD players bearing model numbers that are different from 98% of the DVD players at issue in this lawsuit. (Lee Decl., Exh. M; Wu Decl. ¶ 8.) When MDI inquired about obtaining approval for the Mintek models, DTS directed it to submit an application. (Lee Decl., Exh. E.) MDI never submitted an application for approval by commonality. (MDI's Opp. 6: 4-7.)

### 5. MDI Used The Registered DTS Trademarks In A Manner Likely To Cause Confusion

Confusion under the Lanham Act means that the defendant's use of the mark "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). When one uses the exact registered trademark of another, "reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Kelley Blue Book v. Car-Smarts, Inc.*, 802 F. Supp. 278, 287 (C.D. Cal. 1992); *see also Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991) (courts may infer likelihood of confusion); *Dunkin' Donuts v. Queens Bakery, Inc.*, 216 F. Supp. 2d 31, 44 (E.D.N.Y. 2001) ("likelihood of confusion is inevitable").

To obtain advantage from DTS's good will, MDI knowingly adopted DTS's registered trademarks and used them in exactly the same way that DTS's licensees use the marks. (Rosen Decl., Exhibit B (the Wu Decl. of September 10, 2003) at ¶ 4 and Exhibit D (photocopies of MDI advertisements).) "Thus, defendants' use of [DTS's] marks is likely to confuse consumers who rely on the trademarks as an indication of quality." *Hunting World v. Reboans, Inc.*, 24 U.S.P.Q.2D (BNA) 1844 (N.D. Cal. 1992). MDI has presented no evidence to rebut this presumption, and in any case, as a matter of law, as this Court previously held, "Mintek is using DTS' mark in a manner that suggests DTS is sponsoring and endorsing Mintek's product." (Order Denying MDI's First Motion for Summary Judgment ("OD MDI MSJ # 1").)

MDI relies on *NEC Electronics v. Cal Circuit Abco*, 810 F.2d 1506 (9th Cir. 1987), *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587 (5th Cir. 1993) and

*Yamaha Corp. of Am. v. ABC Int'l Traders, Corp.*, 703 F. Supp. 1398 (C.D. Cal. 1988), for the proposition that there can be no consumer confusion when the trademarked goods are "genuine." Those cases are distinguishable. Unlike the DVD players at issue in this lawsuit, the goods in all of those cases were manufactured by the actual trademark holder and the allegedly infringing trademarks were affixed to the products by the trademark holders themselves. *NEC*, 810 F.2d at 1507-1508; *Matrix*, 988 F.2d at 589; *Yamaha*, 703 F. Supp. at 1400, n.3. In those cases, after manufacturing the goods, the trademark holder sold them to wholesalers, who then sold them to retailers, who sold them to the public. *Id.* Here, DTS did not manufacture the DVD players at issue in this lawsuit. DTS neither affixed its trademark to the players, nor did it authorize anyone else to do so.

Likewise, there is no merit to MDI's contention that consumer confusion cannot exist because it used the Registered DTS Trademarks to signify that its DVD players contain "genuine DTS technology." (MDI's Opp. 10:16-17.) The players were not manufactured pursuant to the terms of any DTS license, nor were they submitted for quality control testing, therefore they "cannot be considered genuine." *El Greco*, 806 F.2d at 395. Moreover, actual use of DTS's highly stylized logo in the same manner as DTS's legitimate licensees cannot constitute nominative fair use. *New Kids On the Block v. News America Publishing, Inc.*, 971 F.2d 302, 308, n.7 (9th Cir. 1992).

**B.     False Designation Of Origin – 15 U.S.C. § 1125(a)**

DTS is entitled to partial summary judgment on the issue of MDI's liability for its false designation of origin claim. The following are the elements of a claim for false designation of origin: (1) defendant made a false or misleading statement of fact in commerical advertising or promotion about its goods; (2) the statements actually deceives or is likely to deceive a substantial segment of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; and (4) the defendant caused

the statement to enter interstate commerce, and (5) the statement results in actual or probable injury to the plaintiff. *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1347-1348 (Fed. Cir. 1999).

It is undisputed that MDI used marks identical to the registered trademarks on its DVD players and on advertisments for its DVD players in interstate commerce. (Rosen Decl., Exhibit B (the Wu Decl. of September 10, 2003) at ¶ 4 and Exhibit D (photocopies of MDI advertisements).) Both DTS's licencees and MDI used the trademarks to indicate that DVD players were capable of playing multi-channel digital sound. For the reasons set forth above in the discussion of likelihood of confusion, MDI's use of the marks in this way is material and likely to deceive the intended audience, consumer purchasers of DVD players, as to DTS's affiliation with the DVD players. MDI's advertising of its DVD players displaying the DTS trademarks resulted in injury to DTS by confusing consumers with respect to its affiliation or endorsement of the Mintek DVD players. For the reasons set forth above, DTS is entitled to summary judgment on its claim for false designation because MDI has not raised a genuine issue of material fact as to any element of the claim. *See Babbit Electronics*, 38 F.3d at 1180; *Dunkin' Donuts*, 216 F. Supp. 2d 31; *El Greco*, 806 F.2d 392; *Hunting World*, 24 U.S.P.Q.2d 1844.

**C.    Trademark Dilution – 15 U.S.C. 1125(c); Cal. Bus. & Prof. Code §14330**

DTS is entitled to partial summary judgment on the issue of MDI's liability for its trademark dilution claims. "'Dilution' is defined as 'the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake or deception.'" *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1326 (9th Cir. 1998). The elements of a claim for dilution under the Lanham Act and California law are: (1) the mark is famous; (2) the defendant used the

11

mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services. *Id.* at 1324.

### 1. The Registered DTS Trademarks Are Famous

It is undisputed that the Registered DTS Trademarks are famous. DTS was founded in 1990 and the Registered DTS Trademarks have been widely used in the consumer electronics market since the mid-1990's. (Compl. ¶¶ 7-8.)

### 2. MDI Used The Registered DTS Trademarks In Commerce

As explained above, it is undisputed that MDI imported and distributed DVD players with the Mintek tradename and the Registered DTS Trademarks. By definition, importation and sale is "use in commerce." 15 U.S.C. § 1127; *Silenus Wines*, 557 F.2d at 808.

### 3. MDI Used The Registered DTS Trademarks After They Became Famous

The Registered DTS Trademarks have been widely used in the consumer electronics market since the mid-1990's, and today all U.S. feature films are released with soundtracks in the DTS format and bear the DTS trademarks. (Compl. ¶¶ 7-8.) When MDI began using the Registered DTS Trademarks in or around the middle of 2001, the Registered DTS trademarks were already very strong and widely recognized. MDI has not disputed that the Registered Trademarks became famous before MDI began using the DTS trademarks. Indeed, the Registered Trademarks were sufficiently well recognized by MDI that, prior to using the Registered Trademarks, MDI investigated getting DTS's permission to use them. MDI was interested in using the trademarks to indicate that its

DVD players were capable of playing DTS multi-channel sound, the same way that they are used on other DVD players. MDI concedes that "[i]n or around June of 2001, DTS voiced objections to Mintek selling DVD players bearing the DTS trademark," and that despite such objections, it imported and sold such DVD players until "the end of 2002." (MDI's Opp. 8:7-8, 24.) MDI also concedes that when it asked DTS for permission to use the marks it was told to submit an application. (Lee Decl., Exh. E.) MDI has not disputed that it used the Registered DTS Trademarks after they became famous.

### 4. MDI's Use Diluted The Registered DTS Trademarks

MDI's use of the Registered DTS Trademarks dilutes the marks by putting DTS's hard earned "name and reputation at [MDI's] mercy." *Panavision*, 141 F.3d at 1327. "[D]ilution protects owners 'from an appropriation of or free riding on' the substantial investment that they have made in their marks." *Mattel v. MCA Records*, 296 F.3d 894, 903 (9th Cir. 2002). MDI argues that its use did not dilute DTS's marks because its DVD players supposedly use the same internal circuitry as those approved by DTS. Even if this were true, it would not raise a genuine issue as to any material fact because the internal circuitry of MDI's DVD players is irrelevant.

"[T]he actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain." *El Greco*, 806 F.2d at 395. Thus, "[e]ven assuming that [MDI] manufactures very high-quality products, [DTS] has no control over [MDI]. [DTS's] mark should not bear the risk of accountability for [MDI's] products." *American Cyanamid Co. v. Campagna Per La Farmacie In Italia S.P.A.*, 678 F. Supp. 1049, 1053 (S.D.N.Y. 1987). Here, MDI sold its DVD players that displayed the mark without submitting its DVD players to DTS for testing, or receiving authorization from DTS to use the mark.

Even if the circuitry of MDI's DVD players were relevant, MDI has presented no competent evidence as to the circuitry of its DVD players. Instead, it relies on declarations from Felix Jiang, who testified that "it was never my job to judge if it was DTS or not." (Lee Decl., Exh. O at 240:19-20.) MDI failed to preserve DVD players for testing, and produced none in response to DTS's discovery requests. (Rosenfeld Decl. ¶¶ 10-12, Exhs. K and L (DTS's discovery request and MDI's response).) In fact, MDI admits that it does not know whether the DVD players at issue in this lawsuit have the same internal circuitry as the Shinco model that failed: "it is unclear whether this [MDI] model is the same as that [Shinco model] rejected by DTS after testing." (MDI's Opp. 1:27-28.) MDI's lack of clarity serves to demonstrate the very purpose of the Lanham Act. If MDI does not know whether its DVD players are the same as those rejected by DTS, then consumers cannot be expected to know.

### D.  Unfair Competition – Cal. Bus. & Prof. Code § 17200 and Common Law

DTS is entitled to partial summary judgment on MDI's liability for its unfair competition claims. MDI has committed unfair competition by knowingly importing and distributing unlicenced DVD players with the Registered DTS Trademarks. "The law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting consumers from confusion as to the source." *Dr. Seuss Enterprises, L.P. v. Penguin Books U.S.A., Inc.*, 109 F.3d 1394, 1404 & n.12 (9th Cir. 1997) (citations omitted). Under California statutory law, "[t]o state a claim under section 17200, a plaintiff need not plead and prove the elements of a tort. Instead, one need only show that members of the public are likely to be deceived." *Searle v. Wyndham Int'l, Inc.*, 102 Cal. App. 4th 1327, 1333 (2002).

MDI cites *St. Ives Labs., Inc. v. Natures Own Labs.*, 529 F. Supp 347, 350 (C.D. Cal. 1981), for the proposition that the test for unfair competition is likelihood of

confusion. Yet as the Court held in *St. Ives Labs.*, "where, as here, the Defendant has deliberately chosen a packaging and trade dress nearly identical to Plaintiff's, likelihood of confusion is presumed." *Id.* MDI has presented no evidence to rebut this presumption, nor could it. As this Court previously held, MDI used plaintiff's exact trademark in a way that "suggests DTS is sponsoring and endorsing Mintek's product." (OD MDI MSJ # 1 at 2.) Therefore, MDI is liable to DTS on both DTS's statutory and common law unfair competition claims.

## DAMAGES WILL BE DETERMINED AT TRIAL

"A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." FED. R. CIV. P. 56(c). Although MDI is liable to DTS on each of its claims, it would be improper to award damages at this juncture. This case needs to proceed to trial so the parties can present evidence on the issue of damages and, more particularly, on the issue of whether MDI's actions were willful and intentional to justify an award of treble damages, or if Plaintiff elects to proceed on its state claims, punitive damages. This case, therefore, will proceed to trial on the issue of MDI's intent and for a determination of the appropriate amount of damages.

## CONCLUSION

For the reasons stated above, summary judgment is GRANTED in favor of DTS and against MDI with respect to liability on DTS's claims for: (a) False Designation of Origin, 15 U.S.C. § 1125(a); (b) Trademark Dilution, 15 U.S.C. § 1125 and California Business and Professions Code § 14330; (c) Trademark Infringement, 15 U.S.C. § 1114;

\ \ \

\ \ \

1 and (d) Unfair Competition, California Business and Professions Code §§ 17200, 17500,
2 and California common law. MDI's cross-motion for summary judgment is DENIED.

5 DATED: May 25, 2004

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE